*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BSP.

CHRIS TOMBS,

        Petitioner-Appellee,

v

BSP,

        Respondent-Appellant.

UNPUBLISHED
April 15, 2025
9:55 AM

No. 371745
Wexford Probate Court
LC No. 2024-001469-MI

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order granting a petition for involuntary mental health treatment. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Petitioner is a police officer who responded to a report of a woman knocking on the doors of local residents and driving up and down the same street for several hours. The officer alleged in the petition requesting involuntary mental health treatment for respondent that he found respondent driving on a nearby road and initiated a traffic stop. The officer further alleged that respondent continued driving for approximately four miles and that, when she finally pulled over, she accused the officer of being "spiritually visited" by a woman who spiritually "takes over" people who will then stalk her. She also told the officer that she had been stalked in this way "hundreds of times" from "Maine to Michigan." The officer transported respondent to a nearby hospital and filed the petition. Two clinician certificates were filed in support of the petition.

At the hearing on the petition, state-licensed psychiatrist Dr. Hassan Almaat testified that he examined respondent and had diagnosed her with "Bipolar Affective Disorder Manic with Psychotic Symptoms." The diagnosis was based upon his observations that respondent had been manic and grandiose as well as her behavior during the incident leading to the petition being filed,

which included claims that there was "something wrong" in the neighborhood in which she had been driving. It was also based upon respondent's belief that there was nothing wrong with her. Dr. Almaat testified that respondent's failure to pull over was evidence that she posed a risk to herself or others.

Respondent disputed the allegations in the petition and Dr. Almaat's testimony. She testified that she did not have a mental illness and that Dr. Almaat told her at the hospital that there was no reason to continue her hospitalization. Respondent added that her lawyer had only briefly met with her on one occasion. And she stated that she had not been informed of her right to an independent evaluation.

Following the hearing, the court found that there was clear and convincing evidence that respondent was a person requiring treatment under MCL 330.1401(1)(a) and (c). This appeal follows.

## II. DUE PROCESS

### A. STANDARD OF REVIEW

Respondent argues that she was denied due process of law during the hearing because (1) her lawyer failed to meet with her within the time limits prescribed by MCL 330.1454(7) and (8); (2) her lawyer failed to file the certification required by MCL 330.1454(9); (3) she was not informed of her right under MCL 330.1463(1) to an independent clinical evaluation. She also asserts that her lawyer's failures amounted to ineffective assistance. Respondent did not preserve her due-process claim by raising it before the trial court. Accordingly, we review that issue for plain error affecting her substantial rights. See *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 3 n 3. Furthermore, because respondent failed to preserve her claim for ineffective assistance, our review of that claim is limited to mistakes that are apparent on the record. See *In re Londowski*, 340 Mich App 495, 516; 986 NW2d 659 (2022).

### B. ANALYSIS

"Under Michigan law, civil-commitment proceedings implicate important liberty interests, protected by due process, that belong to the person who is the subject of a petition for involuntary mental health treatment." *MAT*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). "Due process requires notice of the proceedings and a meaningful opportunity to be heard." *Id*.

We first consider whether respondent was deprived of due process based upon her lawyer's alleged failure to comply with MCL 330.1454(7) through (9) and MCL 330.1455(3)(b). MCL 330.1454 provides, in relevant part:

> (7) Legal counsel shall consult in person with the subject of a petition at least 24 hours before the time set for a court hearing.

> (8) Legal counsel for the subject of a petition under section 452(1)(a) who is hospitalized pending the court hearing shall consult in person with the individual

for the first time not more than 72 hours after the petition and 2 clinical certificates have been filed with the court.

(9) After the consultation required in subsection (7) or (8), counsel promptly shall file with the court a certificate stating that he or she personally has seen and has consulted with the subject of a petition as required by this section.

Additionally, under MCL 330.1455(3)(b), the respondent's lawyer must meet with the respondent within 72 hours of the filing of the two clinical certificates and petition to discuss, among other things, "[t]he nature and possible consequences of commitment procedures."

Here, the petition for respondent's involuntary hospitalization was filed on June 19, 2024, and the second clinical certificate in support of the petition was filed on June 23, 2024. The hearing on the petition was held on June 27, 2024. Accordingly, under MCL 330.1454(7), respondent's lawyer was obligated to meet with her at least 24 hours prior to June 27, 2024. And, under MCL 330.1454(8) and MCL 330.1455(3)(b), respondent's lawyer was obligated to meet with her within the 72 hours of the second clinical certificate being filed, which occurred on June 23, 2024. The record reflects that respondent's lawyer certified on June 24, 2024 that she met and consulted with respondent in person. Because June 24, 2024 was more than 24 hours before the June 27, 2024 hearing, the requirements in MCL 330.1454(7) were satisfied. Further, because June 24, 2024 occurred less than 72 hours after the second clinical certificate was filed on June 23, 2024, the requirements in MCL 330.1454(8) and MCL 330.1455(3)(b) were satisfied. And, given that respondent's lawyer promptly filed the required certification, no violation of MCL 330.1454(9) occurred. Because no violation of the statute is apparent, respondent's contention that the violation of the statute deprived her of due process is without merit. For the same reason, her argument that her lawyer provided ineffective assistance by failing to comply with the statute is also without merit.

Respondent next argues that she was not advised of her right to an independent clinical evaluation. MCL 330.1463(1) provides:

If requested before the first scheduled hearing or at the first scheduled hearing before the first witness has been sworn on a petition, the subject of a petition in a hearing under this chapter has the right at his or her own expense, or if indigent, at public expense, to secure an independent clinical evaluation by a physician, psychiatrist, or licensed psychologist of his or her choice . . . .

In this case, a proof-of-service form states that respondent was personally served the advice-of-rights form on June 21, 2024. This informed respondent of her right to an independent clinical evaluation and how and when to request it. It also advised respondent of the time and date of the hearing. And, as noted earlier, respondent met with her lawyer on June 24, 2024. Because respondent had "notice of the proceedings and a meaningful opportunity to be heard," she was not deprived of liberty without due process of law. *MAT*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted). And for the same reasons, it is not apparent from the record that respondent was denied the effective assistance of her lawyer.

## III. EVIDENTIARY ISSUES

### A. STANDARD OF REVIEW

Respondent next argues that the trial court improperly considered statements made in the petition and clinical certificates and that the court inappropriately asked Dr. Almaat leading questions. Because defendant did not raise these issues in the trial court, we review them for plain error affecting substantial rights. *MAT*, ___ Mich App at ___ & n 3; slip op at 3 & n 3.

### B. ANALYSIS

Respondent argues that the trial court erred by considering statements in the petition and in the clinician certificates submitted for this case. However, the statements contained in the petition were "hearsay data" under MRE 1101(b)(10) that were relied upon by Dr. Almaat in forming his expert mental health opinion and were therefore properly considered by the trial court. See *MAT*, ___ Mich App at ___ n 3; slip op at 7 n 3 (holding that "hearsay data" under MRE 1101(b)(10) includes documents not prepared by an expert witness). Moreover, because the certificates were in the trial court's files, it was permitted to take judicial notice of their existence and consider the statements therein. See *Platt Convenience, Inc v Ann Arbor*, ___ Mich App ___, ___ n 20; ___ NW3d ___ (2024) (Docket No. 359013); slip op at 20 n 20. Next, contrary to respondent's assertion on appeal, consent was not required under MCL 330.1463(3) for the court to consider the clinical certificates submitted with the petition. MCL 330.1463(3) applies only to clinical certificates prepared by an independent clinician selected by respondent. Because the certificates submitted with the petition were prepared by clinicians selected by the state, not by a clinician of respondent's choosing, MCL 330.1463(3) does not prohibit use of the certificates absent respondent's consent for their use.

Finally, respondent argues that the trial court violated the Michigan Rules of Evidence by asking Dr. Almaat leading questions that amounted to making the state's case for it. However, review of the record reflects that the trial court asked appropriate questions of Dr. Almaat in an effort to clarify and "produce fuller and more exact testimony or elicit additional relevant information." *People v Swilley*, 504 Mich 350, 372; 934 NW2d 771 (2019) (quotation marks and citation omitted). See also MRE 614(b). As a result, we discern no error in the court's questioning of Dr. Almaat.

## IV. PERSON REQUIRING TREATMENT

### A. STANDARD OF REVIEW

Finally, respondent argues that there was not clear and convincing evidence that she was "a person requiring treatment" under MCL 330.1401(1)(a) or (c). We review "for an abuse of discretion a probate court's dispositional rulings and we review for clear error the factual findings underlying a probate court's decision." *In re MAT*, ___ Mich App at ___; slip op at 2 (quotation marks and citation omitted). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Moriconi*, 337 Mich App 515, 522; 977 NW2d 583 (2021) (quotation marks and citations omitted). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake

has been made, even if there is evidence to support the finding." *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019) (quotation marks and citations omitted).

## B. ANALYSIS

MCL 330.1401(1), in relevant part, provides:

> As used in this chapter, "person requiring treatment" means (a), (b), or (c):
>
> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
>
> * * *
>
> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

Under MCL 330.1461(1), "[a]n individual may not be found to require treatment unless at least [one] physician or licensed psychologist who has personally examined that individual testifies in person or by written deposition at the hearing." " 'Mental illness' means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." *Tchakarova*, 328 Mich App at 183, quoting MCL 330.1400(g).

In this case, Dr. Almaat diagnosed respondent with "Bipolar Affective Disorder Manic with Psychotic Symptoms." He explained that respondent was manic and grandiose, and that her behaviors during her interaction with the police officer informed his diagnosis. One of the clinician certificates considered by the trial court stated that respondent had a long history of depression and anxiety. Based upon that testimony, we conclude that the trial court's finding that respondent had a mental illness was not clearly erroneous.

Next, Dr. Almaat testified that the events that led to respondent's involuntary hospitalization, particularly her failure to pull over for the police officer for four miles, were evidence that respondent posed a risk to herself or others. He also stated that if respondent's mental illness was left untreated, it could possibly lead to harmful consequences for herself or others. Finally, the record reflects that a gun was found in respondent's car on the day of her initial hospitalization. Therefore, the trial court's overall finding that respondent was "a person requiring treatment" under MCL 330.1401(1) was not clearly erroneous, and it did not abuse its discretion by ordering respondent's hospitalization.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood